O’Neall, J.
The points made by the pleadings, and brought UP ^ aPPeab seem t0 be : 1. As to the right of the sheriff to take the bond of A. Vernon under the order for security jn (jle action of trover : 3. As to the validity of a prison bounds bond, in such a case : 8. As to the effect of the discharge of A. Vernon by the commissioners of special bail, under the Prison bounds act: 4. As to the sufficiency of the description in the bond for the bounds, of the action in which A. Vernon was arrested. Most of these questions are glanced at, and, as the Circuit judge said, in effect decided by the former opinion in the case of M’Lure v. Vernon. That was a discussion somewhat in advance of the questions now made ; but as they were fully and fairly presented by the case then before us, we intended the decision then made as a guide to the parties, and hoped that it might have prevented litigation. It has failed of that most desirable end, and as our object is to settle the law, and to settle it right, as far as the imperfections of men will allow it to be done, I shall consider each of the points now made, as if they were of novel impression, and give the defendant as much benefit of the argument of his counsel, as if we had formed no opinion on any of tho questions until they were now discussed.
Ante 420.
1. Tho first point made presents for consideration the first section of the “ act to alter the Jaw in relation to the action of trover and for other purposes,” passed in December, 1827. Acts of 1827, p. 81. It enacts, “ that from and after the passing of this act, it shall be lawful for any of the judges of this *669 State, or any clerk of the Court of Sessions and Common Pleas, upon affidavit made by any plaintiff intending to com-menee any action of trover for the conversion of any specific chattel, that such chattel belongs to such plaintiff, and has been converted by the defendant, to make an order, directed to all and singular the sheriffs of the said State, requiring them, or either of them, without delay, to cause the defendant or defendants to enter into bond, with sufficient security, to the sheriff of the district in which such action shall he brought, for the production of the chattel sued for, to satisfy the plaintiff’s judgement, in case he should recover against the defendant or defendants; and such specif c chattel shall be liable to satisfy the plaintiff's judgement, to the exclusion of other creditors”
It has been supposed and gravely contended, that the sheriff, under this law, has not the right to take the body of the defendant in such an action of trover, under an order in the very words of the act, and keep him in custody until he enters into the bond for the property. I think the argument of the plaintiff’s counsel in reply to this objection, that the form of the writ “ to attach the body of the defendant,” and its common law effect of being an authority to the sheriff to arrest him, is a very sufficient answer. For at common law, the defendant under such a writ is regarded as arrested by the sheriff, and let to bail. The statutes directing and requiring bail to be given, conferred no power of arrest j they merely turned fictitious into real bail, in the cases in which they authorise the sheriff to require it. It was said that our act regulating bail, (P. L. 273,) which provides “ that no person (excepting transient persons) shall hereafter be held to bail for any sum less than £50, current money, and no person shall be held to bail on any writ of capias ad respondendum for debt, unless an affidavit shall be made before, and attested by, some judge or justice, and indorsed on or annexed to the writ before the service thereof, of the sum really due, nor for any other cause, without a judge’s order on probable cause of action sheWn, to be indorsed on or annexed to the said writ expressing tho sum for which bail shall be given,” took away from the sheriff the power to arrest and hold to bail the defendant, in all cases not permitted by its provisions. It is sufficient to say to this position, that “ leges posteriores priores abrogant;” and that if the act of 1827, by a fair construction, superadds another class of cases, in which bail or security of another kind is required, it must have effect.
If, however, the question rested altogether on the1 words of the act of 1827,1 should not hesitate in saying that they well authorize the sheriff, in executing the order granted under it, to take the body of the defendant and keep him in custody until *670 S^la^ §ive ^le bond directed by the act, or be otherwise discharged according to law. The act directs the order to be directed to all and singular the sheriffs of the said State, requiring them, or either of them, without delay, to cause the defendant or defendants to enter into bond, &c. How is the sheriff to discharge this duty ? Mark, the words are “ to cause the defendant or defendants.” These authorise him to act on the defendant, not on the property in question ; the object is, it is true, to secure that, but that cannot only be obtained in all cases by making the body of the defendant the law’s security until the other security contemplated by the law be given. Whenever the law requires a defendant to give security, and makes it the duty of the sheriff to obtain that security from him, the law would imply -a power to arrest. For without it, the requisition would be vain. I recollect an instance under our statute law, which may serve as an apt illustration of my idea. The 2d section of the act of 1740, speaking of actions brought to try the question of freedom of a negro, provides, “ And in every action or suit to be brought by any such guar, dian, as aforesaid, appointed pursuant to the directions of this act, the defendant shall enter into a recognizance, with one or more sufficient sureties, to the plaintiff, in such sum as the Court of Common Pleas shall direct, with condition,” &c. P. L. 164. The words, it will be observed, are, “ the defendant shall enter,” apparently leaving the act to be done by the defendant, as the discharge of a mere legal duty. But in the course of ninety-five years that this provision has been the law of South Carolina, it has never been doubted that the sheriff, under a judge’s order granted under that section, was bound to take and hold the defendant’s person until he did the act. The words in the act of 1827 are, “ to cause the defendant or defendants the word “ cause,” used in the connection in which it is in the act, is synonymous with “ compel.” If the latter word had been used, no lawyer would have doubted that the law’s compulsory power could only be fully executed by taking and holding the body of the defendant until he did the act required. I am hence satisfied that the sheriff executed the writ in trover correctly, by arresting the body of the defendant. His next act, whereby he allowed him the benefit of the bounds of the prison, or common jail of Spartanburg district, will he next examined. Upon its lawfulness depends the legal obligation of the defendant’s bond.
2. The Prison bounds act (P. L. 456) first recites, that “ humanity requires that the confinement of prisoners on civil process, should be less rigorous than it has hitherto been,” and then enacts, “ that all prisoners on mesne process in any civil action, who are, or shall be, committed to the custody of any *671 or either of the sheriffs,” &c. shall be entitled to the benefit of the bounds, on complying with the other provisions of that act. It would seem that it could be only necessary to read the part of the act which I have cited, in order to be satisfied that the defendant, in the action of trover, was properly “allowed the benefit of the bounds. In construing an act of the legislature, it seems to be thought by some that a plain and obvious reading of it is to be rejected for some hidden meaning. But this is not so. The words used by legislators are to have a fair common sense exposition. It is only when they are ambiguous, or used in a doubtful connection, that construction must be resorted to.
The object of the act is stated in its preamble to be to render the confinement of persons on civil process, less rigorous. What sort of process is that, under which A. Vernon was arrested in the action of trover ? It is clear that it is not criminal process, nor is it partly criminal and partly civil process, it must be the only remaining process known to the law, civil process. The confinement of the prisoner under the writ and order for security in the action of trover, is of one of the persons, whose imprisonment the law intended to render less rigorous. Being within the intention of the law, jf there was any doubt on the words of the act, he would be entitled to a liberal construction of it, so that the mischief might be put down and the remedy advanced. But there is no doubt on the words of the enactment. The prisoner was in custody of the sheriff, on mesne process in a civil action, and therefore the words of the law, as well as its intention, entitle him to its benefit. I admit, if this construction would defeat the act of 1827, that, as the last law, it must have effect. But I apprehend they both will stand together, and together they make a harmonious system. The defendant’s body is, while in the custody of the law, presumed to be equivalent to every cause of action for which he is seized. The prison bounds is but an enlargement of the prison walls ,* the defendant on mesne process is entitled to have the benefit of them on entering into a bond with sufficient sureties, conditioned not to go, or be without the prison rules. He can only be discharged from them, by the consent of the plaintiff, or by satisfying the cause of action, or by rendering in and assigning a schedule of his whole estate, or so much thereof as will pay the sum really due on the action. By the law, as ruled by this Court in the case out of which the act of 1827 grew, the verdict in trover vested the property in the defendant; the object of that act was to make it “ liable to satisfy the plaintiff’s judgement to the exclusion of other creditors.” Connect this provision with the Prison bounds act, and this construction results,,that unless *672 ^ie prisoner’s other property or estate in possession wliich he is willing to assign, should be sufficient to satisfy the plaintiff’s cause of action, he must deliver up the chattel in dispute if it he in his possession, or has been after demand or any other act done by the plaintiff showing that he intended immediately to assert his legal right, or in other words, if the defendant has put the chattel out of his possession with the intent to defeat the provisions of the act of 1827, in order to entitle himself to be discharged from confinement under the Prison bounds act. This construction is a beneficial one to a prisoner under confinement in such a case, and due care is taken in it not to injure the rights of the plaintiff. It is therefore clearly admissible on plain and acknowledged principles of law. According to these views, the defendant in the action of tro-ver was properly allowed the bounds, and this defendant’s bond is valid.
3. This brings me to consider the effect of the discharge of A. Vernon by the commissioners of special bail. I have again looked into the subject and re-considered my opinion in the case of M’Lure v. Vernon, and I am fully satisfied that it gave a just, though a summary exposition of the law in this respect. It is manifest that the 4th section, in its leading provisions, applies to the case of prisoners confined on mesne process alone. It is true, that in that part of the clause which directs the manner in which notice shall be given that the prisoner will be liberated and the property assigned unless satisfactory cause is shown to the contrary, the words “from the prisoners confined as aforesaid on execution or mesne process,” are used. But the words “ on execution,” as here used, refer to the 3d section, and are intended to extend this provision about notice, to the schedule and application of prisoners on execution to be discharged, as well as to those confined on mesne process, and also to extend the provisions relating to the assignment, to both classes of creditors. In relation, however, to the jurisdiction of the commissioners of special bail to hear the prisoner’s application where fraud is charged, the provision in the 4th clause is so different from the provision relating to the same matter in the 7th clause, that it cannot bo doubted that the 4th clause relates to prisoner’s on mesne process. The 7th clause, in its commencement, relates exclusively to prisoners on execution : in its second clause, however, it slides into general provisions, applicable to both classes of prisoners ; but its last clause sets up a provision so totally distinct from the 4th clause, that it must be held to apply to prisoners on execution. If these views be correct, it follows that the commissioners had the power to hear the prisoner’s application, and to discharge him in the case of M’Lure & Co. *673 v. Vernon, upon his assigning so much of his estate as would satisfy the action, or delivering up the chattel sued for. I state thus, the result of the previous construction given to the Prison bounds act and the act of 1827, as applied to the facts appearing before the commissioners of special bail; for it will be seen on referring to the opinion in the case of M’Lure v. Vernon, that the prisoner stated in his schedule a fact in relation to his disposition of the chattels sued for in the action of trover, which amounted to a fraudulent alienation of them to defeat the rights of the plaintiffs under the act of 1827. This ousted the jurisdiction of the commissioners to discharge the prisoner, and their act in this respect is illegal and void, and does not prejudice the right of this plaintiff to sue and recover on this bond, which is forfeited by the prisoner having illegally gone from and without the bounds.
Williams & Henry, for the motion.
Bobo & A. W. Thompson, contra.
4. The fourth point made for the defendant, was not pressed in the argument. On looking into the bond I am satisfied that the description of the action by which the prisoner was confined is sufficient. Speaking of the prisoner, the condition of the bond says, “ who is in the custody of the aforesaid John Poole, by virtue of a writ of capias ad respondendum at the suit of John M’Lure, Thomas M’Lure and Adam Cooper.” This was such a description of the case as enabled the defendant to see, by looking at the writ, the cause of action, and to understand thus the liability which he was about to assume. It is certainty to a common intent, which is sufficient in all matters not of special pleading.
On all the grounds, the defendant can take nothing by his motion, which is therefore dismissed.
Johnson and Harper, Js. concurred.